UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WINDY HEATH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:17-CV-366-HSM-DCP |
| | ) |
| VIRGINIA COLLEGE, LLC, a foreign limited | ) |
| liability company who owns and operates | ) |
| Virginia College at Knoxville, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 22] of the District Judge.

Now before the Court is Plaintiff's Motion for Limited Discovery [Doc. 14]. Defendant Virginia College, LLC ("Virginia College" or "Defendant") filed a Response [Doc. 16] in opposition to the Motion, Plaintiff filed a Reply [Doc. 18], and Defendant filed a Surreply [Doc. 20], all of which have been considered by the Court. The Motion is ripe and ready for adjudication. Accordingly, for the reasons further explained below, the Court **RECOMMENDS** that Plaintiff's Motion for Limited Discovery [**Doc. 14**] be **DENIED**.

**I. BACKGROUND**

Plaintiff filed suit [Doc. 1] on August 18, 2017, alleging battery, intentional infliction of emotional distress by Defendant Christine Adams ("Adams"), invasion of Plaintiff's right to privacy, and violations of the Americans with Disabilities Act ("ADA") and Section 504 of the

Rehabilitation Act of 1973.[1]  For grounds, the Complaint alleges that on July 8, 2016, Plaintiff enrolled in the cosmetology program at Virginia College, LLC.  [Doc. 1 at ¶ 6].  Prior to August 18, 2016, and prior to the commencement of the cosmetology program that included the use of sharp objects and hot instruments, Plaintiff privately disclosed to the Dean of the Cosmetology Department, Defendant Adams, that she (Plaintiff) was HIV positive.  [*Id.* at ¶ 18].  Plaintiff advised Defendant Adams that she took medication for her condition, her HIV was under control and nearly undetectable in her blood, and that she was well aware of the precautions she needed to take as a result of her HIV status.  [*Id.*].  Plaintiff alleges that as a result of the conversation, Defendant Adams told Plaintiff to "clear out her locker" and leave the program and college.  [*Id.*].  Plaintiff refused to leave, knowing that the school could not discriminate against her based on her medical condition and protected health status.  [*Id.* at ¶ 19].

The Complaint continues that on August 18, 2016, Defendant Adams came into the salon/classroom where Plaintiff was working and again demanded that Plaintiff clear out her locker and leave the school.  [*Id.* at ¶ 20].  When Plaintiff refused, Defendant Adams grabbed Plaintiff's arm and attempted to forcibly remove Plaintiff from the salon/classroom.  [*Id.*].  The Complaint alleges that Defendant Adams advised students in Plaintiff's class, as well as in the cosmetology program, that Plaintiff was HIV positive, which is a private medical condition that Defendant Adams was not authorized to disclose to anyone.  [*Id.* at ¶ 21].  Defendant Adams advised Plaintiff that she was no longer a student at Virginia College, despite the fact that Plaintiff had done nothing to warrant being removed from the program.  [*Id.* at ¶ 22].

The Complaint states that on August 19, 2016, the campus president, Sergio Takahashi, held a meeting on campus that included Plaintiff and Defendant Adams.  [*Id.* at ¶ 25].  During the

---

[1] Plaintiff dismissed her claims against Defendant Adams, in her individual capacity, on February 2, 2018.  [Doc. 21].

meeting, Takahashi, on behalf of Virginia College, admitted that the college was wrong when it told Plaintiff, via Defendant Adams, that Plaintiff was being terminated due to her HIV status. [*Id.* at ¶ 26]. The Complaint further states that Takahashi admitted that no Virginia College employee should ever place his or her hands on Plaintiff in an attempt to forcibly remove her from the premises. [*Id.*].

In response to the Complaint, Defendant filed a Motion to Compel Arbitration and to Dismiss or Stay Action [Doc. 7] ("Motion to Compel"). Defendant asserts that arbitration is required per the clause contained in the Enrollment and Tuition Agreement ("Enrollment Agreement").[2] Plaintiff has now moved for limited discovery with respect to the validity of the arbitration provision.

## II. POSITIONS OF THE PARTIES

In her Motion [Doc. 14], Plaintiff states that the arbitration clause is unenforceable as a matter of law and that the Motion to Compel should be denied outright. In the alternative, Plaintiff states that she has sufficient reliable evidence to warrant limited discovery into the circumstances surrounding Plaintiff entering into the Enrollment Agreement and other facts relevant to whether the dispute is arbitrable. Relying on *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764 (3d Cir. 2013), Plaintiff asserts that she has submitted reliable evidence in the form of sworn affidavits attesting to facts supporting that she did not knowingly and voluntarily waive her right to a jury trial and that the arbitration clause is procedurally and substantively unconscionable.

---

[2] The Court observes that Plaintiff refers to this agreement in her filings as the "Enrollment Contract." Further, the Court notes that there are two Enrollment Agreements. One is dated June 1, 2016, [Doc. 9-1 at 10-13], and the other, [Doc. 9-1 at 19-22], is dated July 8, 2016. The Court will refer to these Enrollment Agreements as either the "June Enrollment Agreement" or the "July Enrollment Agreement" when referring to a specific agreement. Otherwise, the Court will use the term "Enrollment Agreement" when discussing the language therein because the documents contain identical language.

3

Plaintiff further argues that she and other similarly situated students cannot afford the costs of arbitration. Plaintiff continues that she did not sign the Enrollment Acknowledgement dated July 8, 2016, and that Defendant admits Stephanie Miles, the Enrollment Specialist, did not meet with Plaintiff that day, raising doubts regarding the counter-signature shown on the Enrollment Agreement dated July 8, 2016.[3]

Plaintiff further maintains that the unconscionability of the arbitration clause under Alabama law, which is the law governing the Enrollment Agreement, is a fact-intensive issue warranting discovery.[4] Plaintiff argues that limited discovery is needed because, without the benefit of a developed factual record, this Court cannot assess whether the arbitration clause contained within the Enrollment Agreement is procedurally and substantively unconscionable. In her objection to the Motion to Compel, Plaintiff argues that the clause is substantively unconscionable because its terms are one-sided and unfair, and/or the mechanism of arbitration is generally oppressive. Plaintiff continues that discovery into the execution of the Enrollment Agreement, as well as the commercial setting, purpose, and effect of the arbitration clause, is required to develop a factual record to permit the Court to engage in the fact-intensive inquiry required by the Alabama Supreme Court. Plaintiff has outlined six areas of discovery. [Doc. 15 at 6-7].

Defendant responds [Doc. 16] that under Sixth Circuit law, the agreement to arbitrate is not in issue and that this Court must compel arbitration without discovery. Defendant argues that it has already produced all of Plaintiff's enrollment paperwork; Plaintiff admits that she signed the

---

[3] The Court observes that in the Enrollment Agreements, Stephanie Miles's name appears above the title, "Authorized College Official." [Doc. 9-1 at 13, 22].

[4] Both the June and July Enrollment Agreements state that the rights and the obligations of the parties shall by "governed by and interpreted, construed and enforced with the internal laws of the State of Alabama." [Doc. 9-1 at 12, 21].

4

June Enrollment Agreement, which includes the arbitration provision; and Plaintiff acknowledges "reactivating" the June Enrollment Agreement when she re-enrolled one month later in July. Defendant points out that Plaintiff admitted to changing the date on her previously-signed June Enrollment Agreement to July 8, 2016, and in doing so, understood she was "reactivating" a contract that was already in force. Defendant asserts that an agreement to arbitrate has been established so no further discovery is needed. Defendant further maintains that Plaintiff cannot assert a breach of contract claim based on the July Enrollment Agreement while at the same time disclaiming there was a valid agreement for purposes of challenging the arbitration provision.

Additionally, Defendant contends that Plaintiff's unconscionability arguments do not compel discovery for similar reasons. Specifically, Defendant maintains that Plaintiff admits to signing the June Enrollment Agreement, including the arbitration provision; she admits that she changed the date on her June Enrollment Agreement to July when she reenrolled; and she filed a breach of contract claim on the Enrollment Agreement that includes the arbitration provision at issue. Defendant states that while Plaintiff cites four federal cases granting motions for limited discovery on arbitration issues, those cases are not based on Alabama law.

Defendant further argues that Plaintiff's claim that she did not knowingly and voluntarily waive her right to a jury trial does not compel discovery because the Sixth Circuit has limited that standard to employment cases. In addition, Defendant asserts that Plaintiff is not entitled to any discovery on the issue of whether she and other students can afford the costs of arbitration because the applicable American Arbitration Association ("AAA") rules place almost all costs on Defendant. Finally, Defendant asserts that the AAA rules address the issue of each party's relationships with proposed arbitrators and that Plaintiff's request for ADA case-related discovery should be denied.

Plaintiff filed a Reply [Doc. 18], asserting that she is entitled to discovery into the issue of validity and enforceability of the arbitration provision. Plaintiff states that while Defendant argues that discovery is not warranted because it produced all of the enrollment paperwork and Plaintiff agreed to the July Enrollment Agreement, this does not end the inquiry into whether the arbitration clause is unconscionable and unenforceable as a matter of law. Plaintiff states that with respect to her breach of contract claim, Defendant's argument is unavailing. Plaintiff asserts that she may challenge the enforceability of a contract's arbitration provision in the context of a breach of contract action without challenging the entire agreement. Plaintiff further maintains that limited discovery is warranted under both federal and Alabama law citing authority from the Third Circuit Court of Appeals and the Alabama Supreme Court. Plaintiff continues that Defendant cannot avoid enforceability of the arbitration clause by stipulating to pay the fees. Plaintiff states that her discovery requests are tailored to address whether the arbitration provision presents an integrated scheme to contravene public policy or a deliberate attempt to impose an arbitration clause that is designed to discourage students from resorting to arbitration. Finally, Plaintiff argues that the "knowing and voluntary waiver" standard applies to her federal civil rights case and that the scope of discovery will be limited to the validity of the arbitration clause.

Defendant filed a Surreply [Doc. 20], which the Court has also considered. Defendant emphasizes that Plaintiff admits that she agreed to the Enrollment Agreement and that assent to the arbitration provision located within the Enrollment Agreement is not in issue. Defendant asserts that Plaintiff has not met her burden of proving that she is entitled to discovery because her unconscionability arguments have no merit. Defendant maintains that Plaintiff has no right to discovery regarding the impact of costs on other students under Sixth Circuit law because it has stipulated to pay the costs. In addition, Defendant states that the effect of a cost provision on

6

Case 3:17-cv-00366-HSM-DCP   Document 23   Filed 07/02/18   Page 6 of 17   PageID #: 462

similarly situated litigants is only relevant if a defendant requests that the cost provision be enforced. Finally, Defendant asserts that Plaintiff has not met her burden of establishing that she is entitled to discovery regarding other arbitrations involving ADA claims.

## III. ANALYSIS

The Court has considered the parties' positions, and for the following reasons, the Court respectfully recommends that Plaintiff's Motion [**Doc. 14**] be **DENIED**.

The Court will begin with an overview of the Federal Arbitration Act ("FAA") for context and then turn to Plaintiff's request for limited discovery.

### A. Federal Arbitration Act

"When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Pursuant to the FAA, "a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate." *Burden v. Check into Cash of Ky., LLC,* 267 F.3d 483, 487 (6th Cir. 2001) (citation omitted). The FAA provides that an arbitration provision in a commercial contract is "valid, irrevocable, and enforceable" except on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While it is well established that "any doubts should be resolved in favor of arbitration," *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983), the federal policy favoring arbitration is "not an absolute one" because arbitration under the FAA is "a matter of consent, not coercion." *Albert M. Higley Co. v. NIS Corp.,* 445 F.3d 861, 863 (6th

7

Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Pursuant to the FAA, "the party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate, but once prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration." *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. 2016) (citing *MHC Kenworth-Knoxville/Nashville v. M&H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013)) (other citations omitted). "A party meets the prima facie burden of establishing an arbitration agreement by providing copies of a written and signed agreement to arbitrate." *Id.* (citing *MHC Kenworth*, 392 S.W.3d at 906). If a court concludes that an arbitration agreement is valid, it must order the parties to arbitration. 9 U.S.C. § 4; *Great Earth Cos., Inc. v. Simmons,* 288 F.3d 878, 889 (6th Cir. 2002). However, if the court determines that the validity of the arbitration agreement is "in issue," 9 U.S.C. § 4, the parties must then proceed to trial to resolve their dispute. *Great Earth Cos.*, 288 F.3d at 889. A trial is only necessary where the party opposing arbitration demonstrates a genuine issue of material fact to the agreement's validity. *Id.* (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d. Cir. 1997)); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (stating that the party challenging arbitration has the burden of proving that the claims at issue are not arbitrable). The required showing mirrors that required to withstand summary judgment in a civil suit. *Great Earth Cos.,* 288 F.3d at 889.

Finally, "because arbitration agreements are fundamentally contracts," courts apply the "applicable state law of contract formation" in performing this limited review. *Tillman v. Macy's, Inc.,* 735 F.3d 453, 456 (6th Cir. 2013) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir 2007)).

With the above analysis in mind, the Court turns to Plaintiff's request for limited discovery.

## B.   Request for Limited Discovery

As mentioned above, the Sixth Circuit has applied the summary judgment standard under Federal Rule of Civil Procedure 56 when ruling on a motion to compel arbitration. *See Great Earth Cos.*, 288 F.3d at 889 ("[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard."). The Sixth Circuit's ruling has led at least one other court to utilize Rule 56(d) when analyzing a motion requesting arbitration-related discovery. *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-CV-00649-CRS, 2018 WL 476163, at *1 (W.D. Ky. Jan. 18, 2018) (holding that "a party seeking to conduct limited discovery prior to responding to a motion to compel arbitration must show 'by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition'") (quoting Fed. R. Civ. P. 56(d)).[5]

Because the analysis of a motion to compel arbitration mirrors the summary judgment standard, the Court will look to Rule 56(d) for guidance with respect to the instant issue. Specifically, Rule 56(d) provides as follows:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

---

[5] The Court observes that in Plaintiff's Reply [Doc. 18], she relies on *Ex parte Greenstreet, Inc.*, 806 So. 2d 1203 (2001) in support of her argument that she has submitted affidavits that set forth specific facts suggesting that the arbitration clause is both procedurally and substantively unconscionable. In *Greenstreet*, the Alabama Supreme Court addressed the appropriate standard for allowing arbitration-related discovery. *Id.* Specifically, the Court explained, "Where information beyond the knowledge of the opposing party is essential to the resolution of the issue and discovery regarding that information is necessary, the trial court and the parties should turn to Rule 56(f), to the extent practicable, as it deals with the circumstances appropriate for continuing a hearing on a motion for summary judgment." *Id.* at 1209. The Court notes that Rule 56(f) of the Alabama Rules of Civil Procedure is substantially similar to Rule 56(d) of the Federal Rules of Civil Procedure.

> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>
> **(3)** issue any other appropriate order.

The Sixth Circuit has explained that "[b]eyond the procedural requirement of filing an affidavit, Rule 56[(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 487 (6th Cir. 2000); *see also Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (summarizing Sixth Circuit precedent that the nonmoving party must (1) file an affidavit that details the discovery needed, and (2) explain how it will help rebut the movant's showing of the absence of a genuine issue of material fact).

In her Motion, Plaintiff states that she has presented sufficient and reliable evidence to warrant limited discovery. Specifically, Plaintiff states that she has presented facts sufficient to place the agreement to arbitrate "in issue." In addition, Plaintiff argues that under Alabama law, whether the arbitration agreement is unconscionable is a fact-intensive issue warranting discovery.

The Court will address these issues separately.

### 1. The Agreement to Arbitrate

Plaintiff asserts that she has submitted reliable evidence in the form of a sworn affidavit attesting to facts that support that she did not knowingly and voluntarily waive her right to a jury trial. She states that she did not sign the Enrollment Acknowledgement dated July 8, 2016, and that Defendant admits Stephanie Miles did not meet with Plaintiff that day, "raising doubts regarding the counter-signature shown" on the Enrollment Agreement dated July 8, 2016. [Doc.

15 at 4].[6] Plaintiff cites to the Third Circuit's decision in *Guidotti* in support of her position and proposes discovery into the following areas:

>   (1) The commercial setting, purpose, and effect of the arbitration clause contained within the Enrollment Contract;
>
>   (2) The circumstances surrounding Ms. Heath's June 1 and July 8, 2016 meetings with the enrollment counselors and her entering into the Enrollment Contract, including, inter alia, whether the counselor controlled Ms. Heath's computer screen; and
>
>   (3) The procedures and electronic systems in place with respect to enrollment in Virginia's College's cosmetology program, including, inter alia, the use of electronic signature pads, what text is visible when students e-sign enrollment documents, and students' access to these documents within the Student Portal.
>
>   (4) The procedures, rules, and costs of arbitration, and information regarding Defendants' relationship with proposed arbitrators, such as contracts and other business dealings;
>
>   (5) The average income of Virginia College students, as needed for the Court to evaluate whether the mechanism of arbitration is oppressive and unfair; and
>
>   (6) The case names, numbers, courts, and outcome of individual cases brought in court or via arbitration regarding Americans with Disabilities Act claims against Defendants.

Defendant responds that under Sixth Circuit law, *Johnson v. Long John Silver's Restaurant, Inc.*, 414 F.3d 583 (6th Cir. 2005), if the arbitration agreement is not in issue, the Court must compel arbitration and that any ambiguities in the contract or doubt as to the intentions are resolved in favor of arbitration. Defendant asserts that it produced all of Plaintiff's enrollment paperwork and that Plaintiff acknowledged that she agreed to sign the Enrollment Agreement, which contains the arbitration provision. [Doc. 16 at 4] (citing [Doc. 8 at 3] (Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and Dismiss or Stay) ("One of the documents Ms.

---

[6] In Plaintiff's Supplemental Affidavit, she states that on July 8, 2016, she "met with a new enrollment counselor (a man)." [Doc. 11-1 at ¶5].

11

Heath signed electronically was the Enrollment Contract, which contained, among other things, an arbitration agreement.").

As an initial matter, it is not entirely clear whether Plaintiff seeks to void the arbitration provision on the basis that she did not re-sign the Enrollment Agreement in July 2016 and/or that Stephanie Miles did not re-sign the Enrollment Agreement in July 2016. *See* [Doc. 15 at 3-4] (stating that the question of arbitrability is "in issue" when the opposing party comes forward with evidence showing that it did not intend to be bound by the arbitration agreement and that Stephanie Miles did not meet with Plaintiff on July 8, 2016, raising doubts as to the counter-signature on the Enrollment Agreement). With respect to the former assertion, Plaintiff did not make this argument in her response to the Motion to Compel, but she filed a surreply [Doc. 11], asserting that she did not affix her signature or initials to any document, electronically, or otherwise during the July 2016 meeting. However, she does not argue that such voids any agreement to arbitrate. Specifically, in her Supplemental Affidavit, which was filed in support of her surreply, Plaintiff disputes that she signed any documents in July 2016, but she acknowledges that her counselor pulled up the Enrollment Agreement on July 8, 2016, and that she (Plaintiff) replaced the date (June 1, 2016) with the current date (July 8, 2016) with the understanding that she was "simply reactivating a contract that was already in force." [Doc. 11-1 at ¶ 6]. The June and July Enrollment Agreements are identical and contain the same arbitration provisions. The Court further notes that Plaintiff began attending cosmetology classes sometime after July 8, 2016. While Plaintiff raises concerns about the counter-signature on the July Enrollment Agreement, she does not explain why she needs discovery on this issue and what facts she hopes to recover. The Court does not find that Plaintiff's proposed discovery is necessary to resolve the Motion to Compel on these issues.

12

The Court further finds that discovery is not warranted on the issue of whether Plaintiff executed the July 2016 Enrollment Acknowledgment. While Plaintiff claims that she did not sign or initial the July 2016 Enrollment Acknowledgment, Defendant emphasizes that this is an entirely separate document from the Enrollment Agreement that constitutes the contract in this case. Defendant is not relying on the Enrollment Acknowledgment to compel arbitration. Rather, Defendant relies on the separate Enrollment Agreement. *See* [Doc. 7 at 4] (Defendant's Motion to Compel) ("The Enrollment and Tuition Agreement executed by Plaintiff clearly contains a written agreement to arbitrate.").

The Court further notes that Plaintiff has alleged a breach of contract in her Complaint. [Doc. 1 at ¶ 62] ("Notwithstanding such knowledge, Defendant Virginia College LLC at its Virginia College at Knoxville campus chose to intentionally, recklessly, and/or maliciously breach the contract with Plaintiff by terminating her from the program."). As explained in *Bowen v. Security Pest Control, Inc.*, "a plaintiff cannot seek the benefits of a contract but at the same time avoid the arbitration provision in the contract." 879 So. 2d 1139, 1143 (Ala. 2003) (quoting *Wolff Motor Co. v. White*, 869 So. 2d 1129, 1136 (Ala. 2003)). Here, Defendant has established its burden that the parties agreed to arbitrate by providing a copy of the Enrollment Agreement [Doc. 9-1]. Thus, the burden shifts to Plaintiff to demonstrate that "the validity of the agreement is 'in issue'" by showing that there is "a genuine issue of material fact as to the validity of the arbitration agreement." *Great Earth*, 288 F.3d at 889. The Court finds that Plaintiff has not fully explained how the above areas of discovery will help the District Judge in determining whether the arbitration agreement is valid.[7] Plaintiff was able to respond to Defendant's Motion to Compel and submit

---

[7] In Plaintiff's Reply [Doc. 18], she argues that the inquiry as to whether the counselor controlled her computer screen concerns the procedural and substantive unconscionability of the clause at issue. In her response to the Motion to Compel, Plaintiff asserts that she did not knowingly and willingly waive her right to a jury trial because she was not provided an opportunity

13

affidavits, explaining her account of the meetings with Stephanie Miles and the other counselor. Accordingly, the Court recommends that Plaintiff's request for limited discovery be denied.

### 2. Unconscionability of the Arbitration Agreement

Plaintiff asserts that she has submitted evidence in the form of sworn affidavits attesting to facts that support a finding that the arbitration clause is procedurally and substantively unconscionable. Plaintiff argues that under Alabama law, whether the arbitration provision is unconscionable is a fact-intensive issue warranting discovery. She explains that discovery will aid this Court in determining whether Plaintiff knowingly and voluntarily waived her right to a jury trial, whether arbitration would permit her and similarly situated plaintiffs to vindicate their federal statutory rights, whether the mechanism of arbitration is oppressive, and whether the clause is unconscionable under state law. In her reply brief, she asserts that many of the factual disputes she hopes to flesh out during discovery (i.e., whether the counselor [Stephanie Miles] controlled her computer screen, whether she had access to the Enrollment Agreement during the cancellation window, whether she lacked a meaningful choice in securing similar education without submitting to mandatory arbitration) concern procedural and substantive unconscionability of the clause at issue.

The Alabama Supreme Court has explained the distinction between "substantive unconscionability" and "procedural unconscionably" as follows:

> [Substantive unconscionability] relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the

---

to review the documents prior to signing. [Doc. 8 at 6-7]. In Alabama, however, "A party to a contract is responsible for reading the contract." *Advance Tank and Const. Co., Inc. v. Gulf Coast Asphalt Co., L.L.C.*, 968 So. 2d 520, 528 (Ala. 2006) (citing *Ex parte Perry*, 744 So. 2d 859, 868 (Ala. 1999)). As further explained, "[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby." *Id.* (quoting *First Family Fin. Servs., Inc. v. Rogers,* 736 So. 2d 553, 558 (Ala. 1999)).

14

> bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.
>
> Procedural unconscionability, on the other hand, deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.

*Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1086–87 (Ala. 2005) (other citations and quotations omitted).

The Court has revisited the six areas of discovery noted above but does not find that discovery is warranted. With respect to the first area, Plaintiff seeks discovery into the commercial purpose, setting, and effect of the arbitration clause. Plaintiff has not sufficiently explained how such discovery will help determine whether the Enrollment Agreement is unconscionable. She submits that she needs such discovery because it is relevant to the oppressiveness and unfairness of the agreement to arbitrate "and/or the mechanism of arbitration." [Doc. 15 at 6]. She does not, however, explain what material facts she hopes to uncover if she were permitted such discovery.

With respect to the second area—that is, circumstances surrounding Plaintiff's meetings and Defendant's procedures and electronic systems—Plaintiff has already provided two affidavits that detail the circumstances of the meetings. While the parties dispute the circumstances of the June 2016 meeting (i.e., Plaintiff claims that the counselor [Stephanie Miles] controlled the computer screen and rushed through the documents, and Defendant claims Plaintiff controlled the computer screen and was able to review the documents at her own pace), Plaintiff has not

15

sufficiently explained how this dispute creates a genuine issue, in light of her acknowledgement that she signed the documents in June 2016.

With regard to the fourth area, Plaintiff has already explained her financial condition and provided an analysis of fees required under the AAA rules. [Doc. 8 at 10-12]. Thus, Plaintiff has already set forth her position without resorting to discovery. In addition, while Plaintiff seeks discovery regarding Defendant's relationship with the proposed arbitrators, such discovery would not aid the Court's resolution of the Motion to Compel. *See In re: Online Travel Company*, No. 3:12-cv-3515, 2013 WL 12123302, at *5 (N.D. Tex. April 24, 2013) (finding a similar request for discovery would not aid the court in resolving the motion to compel arbitration). As Defendant emphasizes, an arbitrator has not been appointed or proposed in this matter, and the AAA rules provide mechanisms to avoid bias.

Finally, with respect to the fifth and sixth areas, the Court also finds such discovery unnecessary. Plaintiff requests discovery on the average income of Virginia College students to evaluate whether the mechanism of arbitration is oppressive and unfair, but such discovery is not relevant to Plaintiff's specific claims that she cannot afford arbitration. With respect to the ADA claims against Defendant, Plaintiff does not explain how such discovery will aid the Court in determining Defendant's Motion to Compel. Whether the arbitration clause prevents Plaintiff from effectively vindicating her statutory rights under the ADA is a legal issue; it does not require discovery with respect to all other ADA cases filed against Defendant.

In summary, Plaintiff essentially argues that she should be entitled to conduct discovery prior to the Court issuing a final order for the limited purpose of determining the validity of the arbitration agreement. Section 4 of the FAA calls for "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*

16

460 U.S. 1, 23 (1983), *superseded by statute on other grounds*, 9 U.S.C. § 16. Here, Plaintiff has provided two sworn affidavits and argues in her Motion that further discovery is needed, but she does not identify exactly what and from whom she hopes to discover. *Williams v. Goodyear Tire & Rubber Co.*, No. 11-2035-STA, 2012 WL 1228860, at *2 (W.D. Tenn. Apr. 11, 2012) (explaining that Rule 56 also requires that "a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information") (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). Therefore, the Court recommends that Plaintiff's request for limited discovery be denied in this case.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court **RECOMMENDS**[8] Plaintiff's Motion for Limited Discovery [**Doc. 14**] be **DENIED**.

Respectfully Submitted,

Debra C. Poplin
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).